IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOYCE ELAINE HANAN** | : | Civil No. 1:16-CV-2020 |
| **Plaintiff,** | : | |
| v. | : | |
| **J.J. HAINES & CO., INC.** | : | |
| **Defendant.** | : | Judge Sylvia H. Rambo |

# **M E M O R A N D U M**

In this employment discrimination action, Plaintiff alleges that her former employer discriminated against her because of her age by assigning her to a less desirable sales territory, thus constructively terminating her employment in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* Presently before the court is Defendant's motion for summary judgment. For the reasons stated herein, Defendant's motion will be granted.

## **I.** **Background**

In considering the instant motion, the court relied on the uncontested facts, or where the facts were disputed, viewed the facts and deduced all reasonable inferences therefrom in the light most favorable to the nonmoving party.

## A. Facts[1]

Defendant J.J. Haines & Co., Inc. ("Defendant" or "Haines") is a floor covering distribution company selling flooring products and supplies headquartered in Glen Burnie, Maryland. (Doc. 19-9, ¶ 3.) It primarily serves retail, commercial, and new home construction businesses in the Northeast, Mid-Atlantic, and Southeast United States. (Doc. 19-8, pp. 21-24 of 66; Doc. 19-9, ¶ 3.) In 2012, Defendant purchased the assets of competitor Allied Products ("Allied"), which operated primarily in the Mid-Atlantic region. (Doc. 19-9, ¶ 4.) Plaintiff Joyce Elaine Hanan had worked as an outside sales representative for Allied selling flooring supplies in a defined territory since approximately 1985. (Doc. 19-8, p. 7 of 66.)

On January 1, 2013, as a result of acquiring Allied, Defendant hired Allied representatives, including Plaintiff who, at the time, was seventy-nine years old. (Doc. 19-8, pp. 7, 20, 22 of 66.) These representatives worked in Defendant's "Allied Supply Division" and reported to Kenneth Wells ("Wells"), Vice President of Sales and Marking, and Fred Reitz ("Reitz"), Vice President of Supplies and Business Development. (*Id.* at 21-22 of 66; Doc. 19-9, ¶¶ 5, 7; Doc. 26-2, pp. 36-37 of 109.) After becoming employed by Defendant, Plaintiff continued in her

---

[1] These facts are largely taken from Defendant's statement of material facts and supporting exhibits. Plaintiff failed to submit a proper response and counter-statement of facts to Defendant's motion as required by the local rules. *See* L.R. 56.1. However, the court will give Plaintiff the benefit of the doubt and refer to Plaintiff's factual section of her brief in opposition, as well as provided exhibits, when appropriate.

same position as an outside sales representative in the same geographic territory. (Doc. 19-8, pp. 7-8 of 66.) While her position was classified as part-time, she typically worked more than forty hours per week for Allied, and then for Defendant. (*Id.* at 7-8, 47 of 66.) In this position, Plaintiff earned approximately $28,000 per year consisting of $1,846.40 draw against commissions and $460 per month for expense reimbursements. (*Id.* at 26-27 of 66.) She was also eligible to receive a 3% commission on "out of warehouse" sales that exceeded $800,000 per month, and a 1% commission on "mill direct" sales that exceeded $180,000 per month. (*Id.*)

In 2014, Defendant acquired CMH Space ("CMH"), another flooring distribution company, which conducted business in the Mid-Atlantic region. (Doc. 19-8, pp. 8, 30 of 66; Doc. 19-9, ¶ 6.) Although CMH and Defendant had different customers, their sales territories overlapped. (Doc. 19-8, pp. 30-31 of 66; Doc. 19-9, ¶ 6.) Because of this overlap and in order for sales representatives to work more efficiently, Defendant decided to restructure the sales territories in the Allied Supply Division. (Doc. 19-8, pp. 8, 31 of 66; Doc. 19-9, ¶ 6.) Reitz and Wells reviewed customer accounts by county and state, and assigned sales representatives to assess customer volume by region. (Doc. 19-9, ¶ 7.) During the restructuring process, Reitz spoke with Robert Davidson ("Davidson"), an employee of Defendant and previous owner, president, and CEO of Allied at the time of its

3

sale.[2] (Doc. 26-3, p. 20 of 109.) Reitz expressed concern over "what to do" with Plaintiff because he wanted to realign the sales territory and have her work full-time, but did not want to be the person that fired an eighty-two year old woman. (*Id.* at 46-48 of 109.) It was Davidson's opinion that Plaintiff should be left in her territory working part-time because she was successful, or transition her clients to a new sales person with Plaintiff's assistance. (*Id.* at 46-47 of 109.) However, Reitz conveyed that he needed someone in the new expanded territory, which included some of Plaintiff's previous territory, quickly. (*Id.* at 47-48 of 109.) Other than this conversation, Davidson was not a part of the restructuring of sales territory or employment decisions. (*Id.* at 43 of 109.) Ultimately, besides Plaintiff, Defendant revised the sales territories in the Allied Supply Division for four representatives and eliminated the position of two representatives. (*Id.* at 5 of 5.) The four representatives who were offered revised territories were ages 47, 50, 61, and 67. (Doc. 19-9, p. 5 of 5.) The two representatives that had their positions eliminated were ages 62 and 65. (*Id.*)

On August 6, 2014, Reitz and Wells, on behalf of Defendant, met with Plaintiff and offered her a full-time sales position with a revised sales territory and

---

[2] When Allied was sold, Davidson executed a three-year contract to work for Defendant through December 31, 2015. (Doc. 26-3, pp. 33 of 109.)

4

compensation structure.³ (Doc. 19-8, pp. 35-37 of 66; Doc. 19-13.) Plaintiff's monthly base salary would be $1,666.67 ($20,000 annually) with a monthly expense allowance of $850. (Doc. 19-13, p. 2 of 8.) Her monthly commission would be calculated as a percentage of the monthly gross margin generated from her sales territory which was projected to be $32,334 for 2014. (*Id.*) The position also made Plaintiff eligible for employee benefits including health, life, dental, and vision insurance, short term and long term disability, and a 401k plan with employer match. (*Id.*) During the meeting, Reitz and Wells described the new position as a "great, wonderful offer" and encouraged Plaintiff to take the job. (Doc. 19-8, pp. 36-37 of 66.) Notwithstanding the offer, Plaintiff testified that, sometime in August 2014, Reitz said, "why don't you think about retiring, we'll have a party for you." (*Id.* at 42 of 66.)

Following the August 6, 2014 meeting, Charles Conkling ("Conkling"), one of Defendant's human resources managers, spoke with Plaintiff and reiterated that she was a valued employee and answered questions regarding the offer. (*Id.* at 38-40 of 66; Doc. 19-14.) Conkling followed-up with Plaintiff concerning their conversation and whether she would be accepting the full-time employment offer on August 22, 2016. (Doc. 19-14.) While considering her options, Plaintiff called Davidson to discuss the offer. (Doc. 26-3, pp. 52-54 of 109.) He echoed Plaintiff's

---

³ If Plaintiff accepted the offer, she was required to sign a confidentiality agreement, which included a non-competition clause. (Doc. 19-13, pp. 4-8 of 8.)

opinion that she would not make much money and have to work hard developing "virgin territory," which would take a year or two to build requiring constant travel. (*Id.* at 53-54 of 109.) Plaintiff ultimately rejected the offer and left her position with Defendant on September 30, 2014. (Doc. 19-8, pp. 9, 41-42 of 66.) At her deposition, Plaintiff testified that she declined Defendant's offer because she believed she would earn less income and she did not want to develop new customer relationships in the new sales territory. (*Id.* at 8-9, 55-56 of 66.) Specifically, she was "tired of developing new territory." (*Id.* at 58 of 66.)

Due to Plaintiff's departure, Defendant recruited for the position offered to Plaintiff and on March 2, 2015 hired John Maiellano.[4] (Doc. 19-9, ¶ 8.) During the first ten months of employment, John Maiellano earned a total income of $65,637.58. (*Id.* ¶ 9.)

Plaintiff has not worked since leaving Defendant and has not applied for any positions in 2015, 2016, or 2017. (Doc. 19-8, pp. 16-17 of 66.) From October through December 2014, Plaintiff applied to four jobs: three reservation/sales positions at hotels and one insurance company sales position. (*Id.* at 17-18 of 66.) Plaintiff was offered the insurance company sales job but turned it down. (*Id.* at 18-19 of 66.)

---

[4] Maiellano was born in 1977 making him under the age of forty when he began working for Defendant. (Doc. 19-9, ¶ 8.)

6

### B. Procedural History

Plaintiff initiated this action by filing a complaint on October 4, 2016, alleging that Defendant assigned her a less desirable sales territory due to her age, and that when she refused the new territory, Defendant wrongfully terminated her employment in violation of the Age Discrimination and Employment Act ("ADEA"). (Doc. 1.) Defendant subsequently answered Plaintiff's complaint on December 27, 2016. (Doc. 4.) Following the close of discovery, Defendant filed a motion for summary judgment, statement of facts, and brief in support on September 18, 2017. (Docs. 19-20.) Plaintiff was provided several extensions of time to respond to the motion and ultimately submitted a brief in opposition on November 3, 2017. (Doc. 26.) On November 16, 2017, Defendant timely filed a reply brief. (Doc. 27.)

## II. Legal Standard

Federal Rule of Civil Procedure 56 sets forth the standard and procedures for the grant of summary judgment. Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law, and is "genuine" only if there is a sufficient

evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010). The non-moving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23.

"Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III. Discussion

Defendant argues that the court should enter summary judgment in its favor because Plaintiff was not constructively discharged in violation of the ADEA when it offered her a position with a new sales territory. (Doc. 19-1, pp. 13-21 of 24.) Alternatively, Defendant contends that Plaintiff should not be awarded damages as she did not attempt to obtain employment to minimize her damages. (*Id.* at 21-23 of 24.)

### A. Whether Plaintiff was discriminated against in violation of the ADEA

Both counts in Plaintiff's complaint set forth essentially the same claim: Plaintiff was discriminated against because of her age when Defendant offered her a full-time position with a new sales territory. (Doc. 1.)

The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To prevail on a claim of intentional discrimination under the ADEA, "a plaintiff must show that his or her age 'actually motivated' or 'had a determinative influence on' the

9

employer's adverse employment decision." *Fasold v. Justice*, 409 F.3d 178, 183 (3d Cir. 2005).

ADEA claims are litigated according to the burden-shifting framework developed for Title VII claims in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) (approving of the "continued application of the *McDonnell Douglas* paradigm in age discrimination cases"); *see also Wilson v. Mobilex USA Inc.*, 406 F. App'x 625, 626 (3d Cir. 2011) ("ADEA . . . claims are governed by the familiar burden-shifting framework set out in *McDonnell Douglas.")*; *Fasold*, 409 F.3d at 183-84 (holding that ADEA claims proceed under the *McDonnell Douglas* framework). Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of age discrimination. *Smith*, 589 F.3d at 689. After doing so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action. *Fasold*, 409 F.3d at 184. If a legitimate nondiscriminatory reason is provided, the plaintiff must present evidence to demonstrate that the defendant's proffered reasons were not its true reasons, but were merely a pretext for its illegal action. *Smith*, 589 F.3d at 691. The plaintiff can prove pretext by submitting evidence that allows a fact finder to either disbelieve the employer's articulated legitimate justification, or to conclude that an invidious discriminatory reason was more likely than not a "but for" cause of the employment action.

*Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994); *see also Keller v. Orix Credit Alliance Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (applying *Fuentes* in ADEA context). To accomplish this, a plaintiff must show that a defendant's reasons are so weak, incoherent, implausible, or inconsistent that they lack credibility. *See Fuentes*, 32 F.3d at 765. Regardless of the method, the evidence must allow a reasonable jury to find, by a preponderance of the evidence, that age discrimination was a "but for" cause for the adverse employment action. *Abels v. DISH Network Serv. LLC*, 507 F. App'x 179, 183 (3d Cir. 2012) (citing *Gross v. FBL Fin. Servs. Inc.,* 557 U.S. 167, 177–78 (2009)).

To establish a prima facie case of age discrimination under the ADEA, a plaintiff must satisfy four elements: (1) she is at least forty years of age; (2) she is qualified for the position in question; (3) she has suffered an adverse employment action; and (4) she has been replaced by a sufficiently younger employee to permit a reasonable inference of age discrimination. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995). Here, it is undisputed that Plaintiff was over the age of forty and that she was qualified for the position offered. Defendant also admitted that it replaced Plaintiff with someone under the age of forty. The only question that remains is whether Plaintiff suffered an adverse employment action.

Plaintiff argues that she was constructively discharged when offered a position with a new sales territory and a different compensation structure. (Doc.

26, pp. 4-5 of 7.) According to Plaintiff: "[She] acted reasonably in her refusal to accept the new territory. She had 20 years experience in selling floor coverings. She therefore knew the difficulty in starting up a new territory." (*Id.* at 5 of 7.) Defendant maintains that because Plaintiff did not experience the new working conditions, she does not know if the new territory and compensation was intolerable, and her belief that she would earn less income was speculative. (Doc. 19-1, p. 15 of 24.) According to Defendant, no reasonable fact finder could conclude that the new sales territory and compensation structure changes were objectively intolerable. (*Id.* at 17 of 24.) Furthermore, Defendant argues that even if the change in territory is considered an adverse employment action, Defendant did not violate the ADEA because it reorganized the sales territory of every account executive in Plaintiff's division. (*Id.* at 20-21 of 24.)

In the constructive discharge context, the Third Circuit utilizes "an objective test to determine whether an employee can recover on a claim of constructive discharge . . . [specifically,] whether a reasonable jury could find that the employer permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 167 (3d Cir. 2001). An employee's subjective perception of working conditions does not govern a constructive discharge claim. *Gray v. York Newspapers, Inc.*, 160 F.3d 971, 1083 (3d Cir. 1992). Courts recognize several objective factors that can be indicative of

constructive discharge: "(1) threat of discharge; (2) suggesting or encouraging resignation; (3) a demotion or reduction in pay or benefits; (4) involuntary transfer to a less desirable position; (5) alteration of job responsibilities; and (6) unsatisfactory job evaluations." *Lebofsky v. City of Phila.*, 394 Fed. App'x 935, 939 (3d Cir. 2010) (citing *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993)).

In cases similar to the one at hand, courts within the Third Circuit have held that a change in job responsibilities does not support a constructive discharge claim. *See, e.g.*, *Spangle v. Valley Forge Sewer Auth.*, 668 F. Supp. 430 (E.D. Pa. 1987) (holding that a reordering of responsibilities while encouraging Plaintiff to stay without a reduction of his salary or benefits was insufficient to support a finding of constructive discharge); *Vogel v. Honeywell*, 1989 WL 48074 (E.D. Pa. May 5, 1989), *aff'd* 888 F.2d 1383 (3d Cir. 1989) (finding that an employee removed from one position but offered another position with the same salary, salary grade, benefits, and reporting level was not subject to an adverse employment action).

Here, Plaintiff was offered a full-time position (an upgrade from part-time), a higher base salary, arguably a better commission rate, and benefits. In accordance with the restructuring of the entire Allied Supply Division, Plaintiff's sales territory changed with the job offer. Plaintiff was encouraged to take this position

13

by Reitz, Wells, and Conkling. Regardless of Plaintiff's subjective belief that she would earn less income and her distaste for developing new sales territory, these conditions were not so objectively unpleasant or difficult that a reasonable person would feel compelled to resign. Furthermore, there is no evidence that anyone working for Defendant pressured Plaintiff to resign besides Plaintiff's recollection of one comment by Reitz mentioning a retirement party if Plaintiff chose to retire. The court finds that a reasonable person would not consider this single comment as "pressure" to resign or retire. Accordingly, there is no evidence that Plaintiff was constructively discharged from her position and, thus, she did not suffer an adverse employment action.

Even if Plaintiff presented evidence to support a finding of an adverse employment action establishing a prima facie case, Plaintiff's claims still fail. Defendant presented evidence that the entire Allied Supply Division was restructured with new sales territories for each employee. Besides Plaintiff, two employees' positions were eliminated entirely, and four others had their territories changed. This is a legitimate, nondiscriminatory reason for offering Plaintiff a position with a new sales territory. With the burden on the Plaintiff again, she has not provided any evidence that Defendant's sales territory restructuring is merely pretext for her discrimination based on her age.

For these reasons, the court will grant summary judgment in favor of Defendant. Consequently, Defendant's alternative argument regarding Plaintiff's ability to recover damages is moot.

## IV. Conclusion

For the reasons stated herein, Defendant's motion for summary judgment will be granted. An appropriate order will issue.

s/Sylvia Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: February 15, 2018